HUGH BURGESS ET AL., APPELLANTS, v. CURLY OLNEY'S, INC., APPELLEE.

251 N. W. 2d 888

Filed March 30, 1977. No. 40936.

Ross, Schroeder & Fritzler, for appellants.

Stevens & Freeman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MC-COWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

This is a law action seeking a money judgment for an alleged breach of a contract by which the defendant agreed to sell to the plaintiffs three used combines. A jury was waived and after trial the court rendered judgment against the defendant for $200 for return of a downpayment made by plaintiff purchasers and dismissed the plaintiffs' petition at their

cost. In its judgment and order of dismissal the court stated: "The Court finds from the evidence introduced at the time of trial that the down payment by plaintiffs to the defendant in the sum of $200.00 should be returned, and therefore judgment for the plaintiffs was rendered in the sum of $200.00. As to all other matters, the court finds for the defendant, and the costs are taxed to the plaintiffs."

The issues presented to the District Court as evidenced by the pleadings, the pretrial order defining issues, and the evidence were the following: (1) Was there a contract. (2) Was it breached by the defendant by selling the combines to a third party before the plaintiffs were required to take delivery. (3) Did the plaintiffs breach the contract by failing to take delivery within 2 or 3 weeks from the time the purchase order was signed and the downpayment made, and was performance by the defendant for that reason excused. (4) If the defendant breached the contract were the plaintiffs damaged, and if so, in what amount.

The plaintiffs have appealed and make four assignments of error. The first three may be consolidated into one, namely, that the judgment is not supported by the evidence. The final assignment, namely, that the court erred in admitting parol evidence to show the plaintiffs had agreed to take delivery within 2 or 3 weeks of the date the order was signed, has not been argued in the briefs and we will note it only in passing.

Plaintiffs' argument is wholly devoted to demonstrating that the evidence was sufficient to support a finding of damages caused to the plaintiffs by the defendant's alleged failure to perform. The plaintiffs mistake their posture before this court on appeal for two apparent reasons: (1) They assume because of remarks made by the trial judge immediately before he announced his decision that the judge based his judgment for the defendant upon the premise

that the evidence of damages was as a matter of law insufficient to support a finding of damage. They overlook the fact that the court's finding for the defendant as evidenced by the judgment is general. The court did not and it was not requested to make specific finding of fact and law as authorized by section 25-1127, R. R. S. 1943. (2) They also overlook the applicable standard and scope of review in this court in a law action where a jury is waived and the issues tried to the court.

The rules are these: "The judgment of a trial court in an action at law where a jury has been waived has the effect of a verdict of a jury and should not be set aside unless clearly wrong.

"In determining the sufficiency of the evidence to sustain the judgment, that evidence must be considered most favorably to the successful party and every controverted fact must be resolved in that party's favor and he is entitled to the benefit of any inferences reasonably deducible from it.

"It shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it. § 25-1127, R. R. S. 1943.

"Where no section 25-1127, R. R. S. 1943, request has been made, the correct rule is: If there is a conflict in the evidence, this court in reviewing the judgment rendered will presume that controverted facts were decided by the trial court in favor of the successful party and the findings will not be disturbed unless clearly wrong.

"A general finding that the judgment should be for a certain party warrants the conclusion that the trial court found in his favor on all issuable facts.

"The rules stated in the three immediately preceding syllabi are not made inapplicable merely because in addition to the general finding the trial court also mentioned certain matters specifically."

Henkle & Joyce Hardware Co. v. Maco, Inc., 195 Neb. 565, 239 N. W. 2d 772.

There is no conflict in the evidence as to whether or not there was an agreement for the sale and purchase of the three combines. There is a direct and irreconcilable conflict as to whether the contract included an oral provision that delivery be taken within 2 or 3 weeks from the date the order was signed. Such an agreement, if made, did not in any way contradict or add to the contract as evidenced by the "Retail Order Form." The instrument simply did not deal with the time of delivery and the contract was not completely integrated in that respect. See Traudt v. Nebraska P. P. Dist., 197 Neb. 765, 251 N. W. 2d 148. The evidence would justify the District Court in finding that the taking of delivery by the plaintiffs and payment by them within 2 or 3 weeks from the signing of the order was a provision of the contract and was breached by the plaintiffs and that rescision by the defendant was proper.

With reference to the matter of damages, the plaintiffs rely upon the provisions of sections 2-713 and 2-715(2), U. C. C. For purposes of discussion here we will assume that the evidence of the plaintiffs was sufficient to have permitted a finding in their favor. The point, however, is that the evidence did not compel any such finding.

We will only briefly sketch the nature of the evidence. The purchase order was executed on November 30, 1973. The total sale price for the three combines was $2,200. Two hundred dollars was paid down and the balance payable was "Cash on Delivery." It is undisputed that the plaintiffs were to take delivery at the defendant's place of business in McCook, Nebraska. On February 20, 1974, the plaintiffs had not taken delivery. On that day the defendant notified the plaintiffs that the downpayment was being returned and then the same day sold the three combines, plus a hay baler, to a

third party for a total price of $3,400. The check for the $200 downpayment was transmitted to the plaintiffs, but not cashed by them at the time of trial and it was for this amount that the court rendered judgment against the defendant.

The plaintiffs' proof of damages takes two tacks. They claim the difference between the contract price and the market price under the provisions of section 2-713, U. C. C. As proof of market price they offered and there was received pertinent pages from "Official Guide Tractors and Farm Equipment," Spring 1974, which gave "average as is" and "average loan" values for combines of the kind and model in question. Such values for the combines totaled approximately $7,000. It was acknowledged, however, that actual market value depended upon the condition of the particular combines and their location within the rather extensive geographical areas covered by the guide. There was no competent opinion evidence offered to show what the particular condition of these combines in question was and what the market price would have been at McCook, Nebraska, when the buyers learned of the breach. The defendant's witness testified that the combines were in poor condition and that the sale of these three particular combines on February 20th, plus the hay baler, for a total amount of $3,400 was an armslength transaction. Under the provisions of section 2-713, U. C. C., the measure of damages for nondelivery or repudiation by the seller is the difference between the market price and the contract price at the place of tender at the time the buyer learned of the breach. See, also, § 2-723, U. C. C. The evidence was such that the District Court could have found that the plaintiffs did not prove their damages in accordance with this standard.

Alternatively the plaintiffs claim consequential damages under section 2-715(2), U. C. C., for the difference between the contract price and the price at

which they could have resold the property in Minnesota (their home and place of business), during the contract period. The plaintiffs offered and there was received in evidence a sales agreement by which a third party had, in December 1973, agreed to purchase the three combines from the plaintiffs at a total price of $8,000.

Section 2-715(2) (a), U. C. C., provides as follows: "(2) Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; . . . ." We will assume for purposes of discussion, but without so deciding, that the above provision defines a proper measure of damages applicable to this case. We will further assume that there was some evidence that "loss . . . could not reasonably be prevented by cover or otherwise." See White & Summers, Uniform Commercial Code, § 10-4, p. 323. We will also assume that there was some evidence that the seller "had reason to know" at the time of contracting of the "general or particular requirements and needs" of the buyer in purchasing the property and from which the loss resulted. Without going into detail, suffice it to say that the evidence establishing the contract for resale of the combines was of such a nature that the court could have found that it was not a contract entered into in good faith, but was a sham and made only for the purpose of providing evidence of loss of profit which would have supposedly been made on resale. The evidence was also deficient in that there was no evidence to show what it would have cost plaintiffs to transport the combines to the place of resale in Minnesota. See § 2-723(2), U. C. C.

AFFIRMED.