## JOSEPH WEISS, APPELLEE, v. UNION INSURANCE COMPANY, A CORPORATION, APPELLANT.

276 N. W. 2d 88

Filed March 6, 1979.   No. 41806.

R. Kevin O'Donnell & William P. Mueller of McGinley, Lane, Mueller, Shanahan & McQuillan, for appellant.

Terry E. Savage and Joseph M. Caffall, for appellee.

Heard before SPENCER, McCOWN, CLINTON, and WHITE, JJ., and WARREN, District Judge.

CLINTON, J.

Union Insurance Company appeals from a holding that Joseph Weiss was the owner of a motor vehicle covered by Weiss' automobile insurance policy with Union on the day the motor vehicle was involved in an accident, that Union's attempted termination of the policy was null and void, and that Weiss was entitled to damages in the amount of the fair market value of the vehicle on the day of the accident less its salvage value.

Joseph Weiss owned a 1974 Chevrolet pickup truck. During the period relevant to this action, the truck was insured with Union for a policy period ending September 21, 1976. Among other things, the insurance contract covered collision damage to the truck in the amount of its actual cash value less $100, and the policy was in effect while any person was using or operating the truck with Mr. Weiss' permission.

In July 1976, Weiss agreed to sell the truck to Ivan Shill, a fellow employee, for $3,100, provided Shill could come up with the purchase price. Since there was a lien on the truck in the amount of $3,100, Weiss felt he needed to receive the entire purchase price at the time of the sale. Weiss and Shill discussed the possibility of financing the sale with a Mr. Beckett, an officer of the bank holding the security interest in

the truck. It was eventually agreed that the bank would loan Shill $2,300 and Weiss' and Shill's employer would loan Shill an $800 downpayment and cosign the note for the bank loan. The two loans to Shill were to be used to pay Weiss' debt, so that after the sale Weiss would have no further obligation to the bank.

On July 13, 1976, Weiss and Shill went to the bank and signed several documents relating to the transaction. Their employer was not present at that meeting as he was out of town that day, but he intended to go to the bank at some other time to cosign the note and hand over the downpayment. Among other things, Weiss and Shill executed and Mr. Beckett notarized the certificate of title to the truck. The certificate had been held by the bank pursuant to Weiss' loan and remained with the bank after it was executed.

Prior to July 13, Weiss had allowed Shill to use the truck from time to time. Between July 13 and 18, Shill used the truck several times. Weiss used the truck at least once in that period and, on one of the days, the truck was in the shop for repairs which were authorized and paid for by Weiss. On July 18, Shill was involved in an accident while driving the truck, and the truck was damaged beyond possibility of repair. It was stipulated at trial that the truck had a fair market value of $3,100 prior to the accident and a salvage value of $400 after the accident.

Weiss reported the accident to Union. In early August, Weiss received a letter from Union denying liability under the policy as of July 13, 1976, on the ground that Weiss had given title to Shill on that day. A check for the remainder of the premium on the truck was enclosed in the letter. Weiss returned the check to the company and, after further efforts to communicate with Union failed, brought this suit.

A jury was waived and trial was had to the court. After hearing the evidence, which consisted primari-

ly of the testimony of Beckett, Weiss, and Shill, the court ruled that Weiss was the owner of the truck on July 18 because there had been no delivery of the truck or the title on July 13 or thereafter. The court found that the attempted cancellation of the policy was null and void and ordered that a judgment be entered for Weiss and against Union in the sum of $2,700 plus costs. Union appealed. We affirm in part and reverse in part.

Union's assignments of error consolidate into a challenge to the Court's finding that Weiss was the owner of the truck after July 13 because there had been no delivery of the truck or the title. Whether or not Weiss was the owner of the truck after July 13 controls the validity of Union's termination of the policy and its liability under the policy; hence, the assignments of error on these points are meaningless.

The sale of motor vehicles in Nebraska is regulated by the Certificate of Title Act. §§ 60-102 through 60-117, R. R. S. 1943. Section 60-105 (1), R. R. S. 1943, states in pertinent part: "No person . . . acquiring a motor vehicle . . . from the owner thereof . . . shall acquire any right, title, claim, or interest in or to such motor vehicle . . . until he shall have had delivered to him physical possession of such motor vehicle . . . and a certificate of title . . . duly executed in accordance with the provisions of this act, and with such assignments thereon as may be necessary to show title in the purchaser thereof . . . ."

As required by section 60-114, R. R. S. 1943, the form for assignment of title which appears on the reverse side of the motor vehicle certificate of title states in part: "The undersigned, being the owner of the motor vehicle described in the within certificate of title, hereby sells and assigns all his right, title and interest in and to said certificate of title and the motor vehicle described therein . . . ." The form

for application for a certificate of title, as required by section 60-114, R. R. S. 1943, also appears on the reverse side of the certificate of title and states that the applicant "hereby states that he is the lawful owner or purchaser of the following described motor vehicle . . . ."

Union takes the position that the mere signing of the above statements under oath by the buyer and the seller constitutes "delivery" of the executed certificate of title regardless of the intent of the parties to the sale. This may be the rule when an innocent third party has relied on a duly executed certificate of title to his detriment. Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315. In the absence of such circumstances, this court has consistently held that, while the execution of the certificate of title is the exclusive method of conveying title to a motor vehicle, the certificate is not in itself conclusive of ownership. First Nat. Bank & Trust Co. v. Ohio Cas. Ins. Co., 196 Neb. 595, 244 N. W. 2d 209; Snyder v. Lincoln, 156 Neb. 190, 55 N. W. 2d 614.

The phrasing of the statute does not support Union's contention that mere execution of the certificate of title constitutes delivery of the certificate. Section 60-105(1), R. R. S. 1943, requires delivery of both the executed certificate of title and possession of the motor vehicle rather than execution of the certificate of title and delivery of possession of the motor vehicle. To adopt Union's interpretation of the act would require us to construe "delivery" as modifying only "possession of such motor vehicle," a construction which clearly violates the grammatical structure of the language of the statute. This we decline to do. In the construction of a statute, no sentence, clause, or word should be rejected as meaningless or superfluous; rather, the plain and ordinary meaning of all the language employed should be taken into account in order to determine the legislative will. Pettigrew v. Home Ins. Co., 191 Neb. 312, 214 N. W. 2d 920.

In determining whether there has been delivery of an executed certificate of title, the ordinary rules pertaining to the delivery of a written instrument apply. The delivery of a written instrument is largely a question of intent, which is to be determined from all the facts and circumstances of the particular case. There must be an intent on the part of the grantor that the instrument operate as a muniment of title to take effect presently and an acceptance of the instrument by the grantee with the intent to take title. Smith v. Black, 143 Neb. 244, 9 N. W. 2d 193; Ehlers v. Seip, 136 Neb. 722, 287 N. W. 202.

Whether the parties had the requisite intent is a matter for the finder of fact, and the judgment of a trial court in an action at law where a jury has been waived has the effect of a verdict of a jury and should not be set aside on appeal unless clearly wrong. In determining the sufficiency of the evidence to sustain a judgment, that evidence must be considered most favorably to the successful party; every controverted fact must be resolved in that party's favor, and he is entitled to the benefit of any inferences reasonably deducible from it. Burgess v. Curly Olney's, Inc., 198 Neb. 153, 251 N. W. 2d 888. In this case, Weiss and Shill both testified they did not intend to pass title to the truck at the time of the execution of the certificate of title but were only completing the preliminary paperwork so that title could pass when their employer paid over the downpayment and cosigned the note. The evidence is clearly sufficient to sustain the trial court's holding that delivery of the certificate of title never took place.

The evidence that Weiss and Shill did not intend delivery of the certificate of title is not negated by the fact that the instrument was left with Mr. Beckett. "An instrument is not delivered until it has passed beyond the dominion, control, and au-

thority of the maker and is no longer capable of being recalled," Kula v. Kula, 149 Neb. 347, 31 N. W. 2d 96, and where the maker gives the instrument to a third person to hold until the happening of some contingency, there is no delivery. Ladman v. Ladman, 130 Neb. 913, 267 N. W. 188.

Beckett testified that he did not believe a sale had taken place on July 13 and was merely holding the documents until the downpayment and cosigning were completed. Beckett further testified that he had no authority to deliver title to Shill or anyone else until these conditions were met and in fact took no action with respect to any of the documents signed by Shill, including the loan papers, because he considered the sale had never been completed.

Union argues the bank could not have been acting as an agent for Weiss because it had already entered into a financing arrangement with Shill and was therefore not completely under Weiss' control. In fact, the evidence clearly shows that the bank was acting as an escrow agent and had a duty to Weiss to hold the certificate of title until the performance of the conditions of the sale and a duty to Shill to deliver the title when the conditions had been fulfilled. Pike v. Triska, 165 Neb. 104, 84 N. W. 2d 311. That the bank also had a financial interest in the transaction does not negate the agency where the bank's own interests coincided exactly with its duties as an escrow agent. Since the certificate of title was held in escrow, legal title to the truck remained in Weiss until performance of the conditions of the sale. Pike v. Triska, *supra*.

The trial court also held that there had been no delivery of physical possession of the truck. As section 60-105 (1), R. R. S. 1943, clearly requires delivery of both physical possession of the vehicle and an executed certificate of title and delivery of the certificate of title never took place, we need not review that issue on this appeal.

We affirm the verdict, but the trial court's award of damages requires modification. By stipulation, the parties agreed the value of the truck was $3,100 before the accident, its salvage value after the accident was $400, and the total loss was therefore $2,700. The trial court accordingly entered judgment for Weiss in the amount of $2,700. However, the insurance policy, which is incorporated into the record, shows Weiss' collision insurance was the "$100 deductible" variety. Thus, under the policy, Weiss was entitled to a judgment of only $2,600.

Union neglected to assign the excessiveness of the award as error, but this court may, at its option, consider plain error not specified in appellant's brief. § 25-1919, R. R. S. 1943; Schmidt v. Richman Gordman, Inc., 191 Neb. 345, 215 N. W. 2d 105. We therefore hold the trial court's award of damages was excessive to the extent that it did not reflect the "$100 deductible" provision.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR MODIFICATION IN CONFORMITY WITH THIS OPINION.